IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL CHEROMIAH, et al,

    Plaintiffs,

vs.                                                                                NO. CIV 97-1418-MV/RLP

UNITED STATES OF AMERICA,
ACOMA CANONCITO LAGUNA HOSPITAL,
GERLAD HEPNAR,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant United States of America's Motion to Dismiss In Part **[Doc. No. 16]**. Having considered the motion, response, reply, relevant law, and being otherwise fully informed, the Court finds that Plaintiffs' First Amended Complaint fails to state an actual claim or controversy. Defendant's Motion therefore is well taken and will be **GRANTED**, as explained below.

### BACKGROUND

Indian Health Services, an agency of the United States government, owns and operates the Acoma Canoncito Laguna Hospital ("ACL Hospital"), located within the bounds of Acoma tribal land. ACL Hospital provides 24-hour emergency service primarily to members of the Acoma tribe

and residents of other neighboring reservations. ACL Hospital participates in the Medicare system, routinely making claims on behalf of its many Medicare eligible patients.

According to the Complaint, Michael Cheromiah went to the emergency room at ACL Hospital four times between October 31 and November 4, 1995, seeking treatment for an acute respiratory problem. Doctors at ACL Hospital repeatedly failed to properly diagnose or treat what later turned out to be a bacterial infection, even after having been informed that Cheromiah's family physician suspected such an infection. When Cheromiah made his fourth and final trip to the emergency room, his condition was so dire that the attending physician ordered his immediate transfer to a hospital in Albuquerque offering more complete services. By the time Cheromiah arrived at the Albuquerque hospital he was in cardiac arrest. During the attempts to save his life, doctors discovered a hole in his heart caused by the undiagnosed and untreated bacterial infection. Despite the efforts to save him, Michael Cheromiah died on November 4, 1995. He was 20 years old.

Michael Cheromiah's parents, Michael Cheromiah (senior) and Diane M. Cheromiah (collectively "the Cheromiah family"), individually and as personal representatives of the deceased, filed two concurrent suits arising from these events. The first suit was filed in Acoma Tribal Court on October 29, 1997, raising claims of medical malpractice. The second suit was filed in this Court the next day. Plaintiffs' First Amended Complaint before this Court seeks a declaratory judgment that the Acoma Tribal Court has jurisdiction to hear Plaintiffs' claims against the United States government under the Federal Tort Claims Act ("FTCA") and the Emergency Medical Treatment and Active Labor Act ("EMTALA"). Alternatively, Plaintiffs' First Amended Complaint directly raises claims of medical malpractice under the FTCA and the EMTALA.

The United States government filed a Motion to Dismiss in Part seeking to dismiss that part of the Cheromiah family's complaint requesting a declaratory judgment that the Acoma Tribe has jurisdiction over their medical malpractice claims. The Cheromiah family has responded by asking this Court to in fact rule that the Acoma Tribal Court has jurisdiction over this matter.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party seeking to invoke a federal court's jurisdiction sustains the burden of establishing that such jurisdiction is proper. *Penteco Corp. v. Union Gas System, Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction typically take two forms: a facial challenge or a factual challenge. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). A facial challenge is an attack on jurisdiction that questions the sufficiency of the complaint. *Id.* In reviewing a facial attack on a complaint, the court must accept the allegations in the complaint as true. A factual attack on subject matter jurisdiction challenges the facts upon which subject matter jurisdiction depends. *Id.* In reviewing a factual attack on subject matter jurisdiction, a court may not presume the truthfulness of the complaint's factual allegations but must go beyond the allegations and evaluate the evidence presented by the parties. *Id.* While the court may refer to evidence extraneous to the complaint in making appropriate factual findings on jurisdictional issues, it generally cannot

convert a 12(b)(1) motion into one for summary judgment. *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir. 1987).

A court, however, is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when "resolution of the jurisdictional question is intertwined with the merits of the case." *Holt,* 46 F.3d at 1003; *Wheeler*, 825 F.2d at 259 n.5. "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt,* 46 F.3d at 1003.

## ANALYSIS

Prior to any consideration of the merits, this Court must satisfy itself that it indeed has jurisdiction over the claims before it. *Comanche Indian Tribe of Oklahoma v. Hovis*, 53 F.3d 298, 302 (10th Cir. 1995). The somewhat odd and apparently unique question presented is as follows: Does this Court have jurisdiction to issue an affirmative declaratory judgment that the Acoma Tribal Court has jurisdiction over Plaintiff's claims?

The United States government argues briefly that this Court lacks subject matter jurisdiction over the claims raised. As the government correctly points out, "[t]he Declaratory Judgment Act does not confer jurisdiction upon the federal courts." *Cardtoons v. Major League Baseball Players Assoc.*, 95 F.3d 959, 964 (10th Cir. 1996); *Calderon v. Ashmus*, __ U.S. __, 118 S.Ct. 1694, 1697 (1998). Rather, an independent basis for jurisdiction over the underlying case must be cited before the Court is vested with jurisdiction to issue a declaratory judgment. *Calderon*, 118 S.Ct. at 1697; *Cardtoons*, 95 F.3d at 964.

4

In the present case, Plaintiffs have properly plead claims pursuant to the Federal Tort Claims Act and the Emergency Medical Treatment and Active Labor Act, thereby providing this Court with federal question jurisdiction. 28 U.S.C. § 1331; *see Cardtoons*, 95 F.3d at 964-965. Further, the jurisdiction of tribal courts is an issue of federal common law which itself confers subject matter jurisdiction on federal district courts. *Nat'l Farmers Union Insurance Co. v. Crow Tribe of Indians*, 471 U.S. 845, 850-53, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1501 (10th Cir. 1997). Thus, subject matter jurisdiction is not itself a hurdle to Plaintiffs' action for a declaratory judgment.

However, subject matter jurisdiction is not the only restraint on the jurisdiction of the federal courts. Indeed, Article III district courts are courts of limited jurisdiction, empowered to hear only "actual cases or controversies." *Calderon*, 118 S.Ct. at 1697; *Cardtoons*, 95 F.3d at 965; *Kunkel v. Continental Casualty Co.*, 866 F.2d 1269, 1273 (10th cir. 1989). Moreover, the Declaratory Judgement Act itself provides that "[i]n a case of *actual controversy* within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis supplied); *see also* Fed. Rule Civ. Proc. 57; *Calderon*, 118 S.Ct. at 1697; *Cardtoons*, 95 F.3d at 965. The Supreme Court has "recognized the potential for declaratory judgment suits to fall outside the constitutional definition of a 'case' in Article III." *Calderon*, 118 S.Ct. at 1698. Thus, the question remains whether Plaintiffs' action seeking a declaratory judgment properly presents a "case or controversy" which this Court is empowered to decide. *Calderon*, 118 S.Ct. at 1697; *Cardtoons*, 95 F.3d at 965; *Kunkel*, 866 F.2d at 1273. "The declaratory plaintiff bears the burden of establishing the existence of a controversy by a preponderance of the evidence." *Cardtoons*, 95 F.3d at 965.

5

The requirement that a federal court have before it a genuine case or controversy stems from the longstanding prohibition on the issuance of advisory opinions. *See Kunkel*, 866 F.2d at 1273-1274. Courts, however, have struggled with the distinction between an "actual case or controversy" and facts which present merely a hypothetical or abstract dispute. As the Tenth Circuit explained, "[i]n *Maryland Casualty Co. v. Pacific Oil & Coal Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), the [Supreme] Court recognized that the distinction between an abstract question and a "controversy" was blurred. To fashion a "precise test" for determining in every instance the presence of a controversy was impossible." *Kunkel*, 866 F.2d at 1274. Instead, the courts must determine on a case by case basis "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Kunkel*, 866 F.2d at 1274 (quoting *Maryland Casualty Co.*, 312 U.S. at 273); *see also Calderon*, 118 S.Ct. at 1698 (defining Article III case as a claim "brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs." (citation and quotation marks removed)).

More recently, in a unanimous opinion, the Supreme Court explained that declaratory judgments are proper were "the controversy would admit 'of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Calderon*, 118 S.Ct. at 1698 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)). In *Calderon*, the Court ruled that the district court did not have jurisdiction to issue a declaratory judgment as to whether California qualified under the provisions for expedited processing of death penalty habeas claims in the

6

Antiterrorism and Effective Death Penalty Act of 1996. Noting that the plaintiffs had not yet filed habeas petitions, the Court stated,

> respondent here seeks a declaratory judgment as to the validity of a defense the State may, or may not, raise in a habeas proceeding. Such a suit does not merely allow the resolution of a "case or controversy" in an alternative format, as in *Aetna Life Ins.*, *supra*, but rather attempts to gain a litigation advantage by obtaining an advance ruling on an affirmative defense. The "case or controversy" actually at stake is the class members' claims in their individual habeas proceedings. Any judgment in this action thus would not resolve the entire case or controversy as to any one of them, but would merely determine a collateral legal issue governing certain aspects of their pending or future suits.

*Id.* at 1698-99 (citations omitted). The Court emphasized the need to insure that an actual case or controversy was before the court in order "to prevent federal court litigants from seeking by declaratory judgment to litigate a single issue in a dispute which must await another lawsuit for complete resolution." *Id.* at 1699.

The Tenth Circuit has likewise stated, "'[a]dvance expressions of legal judgment upon issues which remain unfocused' are impermissible." *Kunkel*, 866 F.2d at 1274 (quoting *United States v. Fruehauf*, 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476 (1961)). Accordingly, the Tenth Circuit has held that declaratory judgments are only appropriate "when the judgment will (1) clarify or settle the legal relations in issue and (2) terminate or afford relief from the uncertainty giving rise to the proceeding." *Id.* at 1275 (citing E. Borchard, Declaratory Judgments 299 (2d ed.1941)).

In the case at bar, Plaintiffs request a declaratory judgment affirmatively stating that the Tribal Court has jurisdiction to hear their underlying medical malpractice claims against the United States government. This Court has been unable to locate any case presenting just these facts. It appears well settled that a party *challenging* the jurisdiction of a tribal court may seek a declaratory judgment in

federal court that the tribal court *does not* have jurisdiction over the claims raised or that the Tribe does not have certain regulatory authority, thereby preventing or restraining the Tribe from exceeding the bounds of its authority. *See Strate v. A-1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997); *Nat'l Farmers Union Insurance*, 471 U.S. at 853 ("The District Court correctly concluded that a federal court may determine under § 1331 whether a tribal court has *exceeded* the lawful limits of its jurisdiction." (emphasis supplied)); *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498 (10th Cir. 1997); *Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531 (10th Cir. 1995); *El Paso Natrual Gas Co. v. Neztsosie*, 136 F.3d 610 (9th Cir. 1998); *Montana v. Gilham*, 133 F.3d 1133 (9th Cir. 1998); *County of Lewis v. Allen*, 141 F.3d 1385 (9th Cir. 1997); *Yellowstone County v. Pease*, 96 F.3d 1169 (9th Cir. 1996); *United states v. Yakima Tribal Court*, 806 F.2d 853, 858 (9th Cir. 1986); *Hornell Brewing Co. v. Rosebud Sioux Tribal Court*, 133 F.3d 1087 (8th Cir. 1998); *UNC Resources, Inc. v. Benally*, 518 F.Supp. 1046 (D.Az. 1998); *Atkinson Trading Co. v. Navajo Nation*, 866 F.Supp. 506 (D.N.M. 1994). Likewise, it appears that a *Tribe itself* may seek a declaratory judgment that a State court *does not* have jurisdiction over certain claims or that the State does not have certain regulatory authority, thereby preventing the State from exceeding its authority and infringing on the sovereignty of the Tribe. *See South Dakota v. Yankton Sioux Tribe, et, al.*, __ U.S. __, 118 S.Ct. 789, 139 L.Ed.2d 773 (1998)*; Comanche Indian Tribe of Oklahoma v. Hovis*, 53 F.3d 298, 300-301 (10th Cir. 1995); *Native Village of Venetie I.R.A. Council v. Alaska*, 944 F.2d 548 (9th Cir. 1991); *Confederated Tribes of the Colville Reservation v. Superior Court of Okanogan County*, 945 F.2d 1138 (9th Cir. 1991). And, in the case most similar to the case at bar, *Louis v. United*

8

*States*, 967 F.Supp. 456, 457 (D.N.M. 1997), plaintiffs sought to *enforce* a tribal court judgment through a declaratory judgment action in federal court.

However, the Court has found no case in which a federal court entertained a request for an affirmative, preemptive declaration that the tribal court, or for that matter a State court, did in fact have jurisdiction over the underlying claims. These facts appear to inhabit the borderland between "an actual case or controversy" and a request for an "advisory opinion." On the one hand, there is no doubt that the parties are embroiled in a real, adversarial dispute and that resolution of that dispute will likely entail determining the jurisdiction of the Acoma Tribal Court over Plaintiffs' claims. Likewise, given that the Acoma Tribal Court chose to exercise jurisdiction over similar claims in the case of *Louis v. United States*, 967 F.Supp. 456, to refuse to issue a declaratory judgment at this point may simply unnecessarily prolong the resolution of this case.

On the other hand, the jurisdiction of the Acoma Tribal Court is not among "the rights and other legal relations" of the interested parties which the Declaratory Judgment Act empowers this Court to rule on. The Acoma Tribal Court is not a party to this action and, indeed, it is unclear that a declaratory judgment by this Court would be binding on the Tribal Court. Further, it may be that, following the district court opinion in *Louis,* the Acoma Tribal Court will now conclude that it does not have jurisdiction over Plaintiffs' claims. Thus, the facts do not clearly present a controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Kunkel*, 866 F.2d at 1274. In addition, as in *Calderon*, issuance of the requested declaratory judgment will not resolve the controversy between the parties "but would merely determine a collateral legal issue governing certain aspects of their pending or future [suit]." 118 S.Ct. at 1698-99. The question of jurisdiction does not effect the rights or controversy *between* the parties but merely determines where

9

their battle will be fought. Regardless of how the Court were to rule, a declaratory judgment as to the jurisdiction of the Acoma Tribal Court would not resolve the case or controversy but would merely give one side a "litigation adavantage" in the form of "an advanced ruling." *Calderon*, 118 S.Ct. at 1698-99.

For the forgoing reasons, the Court concludes that plaintiffs have failed to prove by a preponderance of the evidence that an actual case or controversy exists between the parties regarding the jurisdiction of the Acoma Tribal Court in which this Court would be empowered to issue a declaratory judgment. *Calderon*, 118 S.Ct. at 1698-99; *Cardtoons*, 95 F.3d at 965. "A federal court declaratory judgment is simply not the proper means to untangle this jurisdictional knot." *Confederated Tribes of the Colville Reservation*, 945 F.2d at 1141.[1]

In addition, the issuance of a declaratory judgment is committed to the sound discretion of the district court. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Kunkel*, 866 F.2d at 1273. As the Tenth Circuit Explained,

> the existence of a "case" in the constitutional sense does not confer upon a litigant an absolute right to a declaratory judgment. *Green v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962). Whether to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the trial court. *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 462, 65 S.Ct. 1384, 1390, 89 L.Ed. 1725 (1945).

*Kunkel*, 866 F.2d at 1273.

---

[1]Perhaps it is splitting legal hairs to distinguish between an action brought by a defendant to declare that a tribal court lacks jurisdiction and an action brought by a plaintiff to declare that the tribal court does have jurisdiction. Yet, if this Court does not scrupulously honor the limits of its own authority, how can it ask the Acoma Tribal Court or any other court to do the same.

In this matter, the Court is further influenced by the considerations of comity which mandate that this Court respect the authority of the tribal courts, including the authority to make determinations as to the scope of their own jurisdiction. *See Nat'l Farmers Union Insurance*, 471 U.S. at 857; *Iowa Mutal*, 480 U.S. at 16-17; *Kerr-McGee Corp.*, 115 F.3d at 1501-1503. With these factors in mind, the Court further declines, as a matter of its discretion, to entertain Plaintiffs' request to issue a declaratory judgment regarding the jurisdiction of the Acoma Tribal Court in this matter. *Kunkel*, 866 F.2d at 1273.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant United States of America's Motion to Dismiss In Part **[Doc. No. 16]** is hereby **GRANTED**. Accordingly, Plaintiffs' First Amended Complaint Seeking Declaratory Judgment That Jurisdiction and Venue are Proper in Acoma Tribal Court is **DISMISSED WITH PREJUDICE**. Plaintiffs' Alternative Complaint for Medical Negligence, EMTALA, Wrongful Death, and Loss of Consortium is unaffected by this ruling and remains properly before the Court.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
    Randi McGinn

Attorneys for Defendants:
    Joseph Kaster

11