# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MICHAEL CHEROMIAH, individually and**
**DIANNE CHEROMIAH, individually and as**
**Personal Representative of the ESTATE OF**
**MICHAEL CHEROMIAH, deceased,**

      **Plaintiffs,**

      vs.                                        Civ. No. 97-1418 MV/RLP

**UNITED STATES OF AMERICA & ACOMA**
**CANONCITO LAGUNA HOSPITAL,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

Defendant, United States, moves this Court pursuant to Rule 37 Fed.R.Civ.P. to compel Plaintiffs to answer interrogatories 10, 11, 12, 13, 17, 18, 20 and 25 of Defendant United States' Second Set of Interrogatories. **(Docket No. 92)**. For the reasons set forth below, the motion is granted in part and denied in part.

At the outset, I note that the Interrogatories were propounded to "plaintiffs." Accordingly, both Plaintiffs are required to prepare and serve answers.

**IT IS THEREFORE ORDERED** that Plaintiff Michael Cheromiah provide verified Answers to the United States' Second Set of Interrogatories no later than **July 9, 1999**.

The remainder of this Memorandum Opinion and Order presumes that the Answers previously provided by Plaintiff Diane Cheromiah will be adopted by Plaintiff Michael Cheromiah. **IT IS THEREFORE ORDERED** that Plaintiffs notify the Court immediately if different answers are provided.

## INTERROGATORY NO. 10.

This interrogatory asks Plaintiffs to identify every act or omission by seven physicians which they (Plaintiffs) allege breached the standard of care in the treatment of the decedent. The Interrogatory was answered by Plaintiff Diane Cheromiah, who responded by stating that in her lay opinion, three physicians had not breached the standard of care (Drs. Gutierrez, Ramo and Langerstrom), and three physicians wrongfully sent the decedent home from the hospital three times over a four day period, when he needed to be hospitalized for proper treatment. (Dr. Kelly, Friedman and Hepnar). No mention is made of the seventh doctor listed. (Dr. Fry). For the "medical" response to the interrogatory, Plaintiff referred to "all of my expert's reports and depositions."

The Answer provided to Interrogatory No. 10 clearly indicates to the Court that Plaintiffs have abandoned all claims made against Defendant based on the conduct of Drs. Gutierrez, Ramo and Langerstrom. No further response is required as to these doctors. With regard to the answer provided as to Drs. Kelly, Friedman and Hepnar, the Court finds that the Answer is not sufficient. Plaintiffs shall supplement their answer to this interrogatory to include the specific expert witnesses whose reports and depositions support their contentions. Finally, Defendant correctly points out that Plaintiffs have totally failed to answer with regard to claims against Dr. Fry. Plaintiff's are to provide Defendant with an answer that includes Dr. Fry.

**IT IS THEREFORE ORDERED** that Plaintiffs supplement their answer to Interrogatory No. 10 as directed above no later than **July 9, 1999**.

## INTERROGATORY NO. 11

This interrogatory asks whether the breaches of the standard of care identified in the Answer to Interrogatory No. 10 proximately caused harm to the decedent, and if so, the specific harm caused

2

thereby and the factual basis for so claiming. Plaintiff Dianne Cheromiah responded by stating that if the physicians at ACL ("Acoma Canoncito Laguna Hospital" herein) had properly treated or timely transferred the decedent his death would have been prevented, and that the failure to so do was the proximate cause of injuries.

The Court interprets Plaintiff's answer to Interrogatory No. 11 as consistent with her answer to Interrogatory No. 10; that is, that claims based on the conduct of Drs. Gutierrez, Ramo and Langerstom have been abandoned, and that the ACL doctors referred to as the "ACL Hospital doctors" are Drs. Kelly, Friedman and Hepnar. Plaintiffs' answer is adequate as to these six physicians.

**IT IS THEREFORE ORDERED** that Plaintiffs supplement their answer to Interrogatory No. 11 to the extent necessary to address claims based of the conduct of Dr. Fry no later than **July 9, 1999**.

### INTERROGATORY NO. 12

This interrogatory asks why each act or omission claimed as a breach of the standard of care by Dr. Kelly in the answer to interrogatory No. 10 are not also alleged against Dr. Gutierrez. Plaintiffs objected to this Interrogatory on the grounds that they did not understand the question, and also referred to Dr. Henry's report and deposition.

Plaintiffs' objection is overruled. Although the Interrogatory could have been more clearly stated, it is not unintelligible.

**IT IS THEREFORE ORDERED** that Plaintiffs supplement their answer to Interrogatory No. 12 as directed above no later than **July 9, 1999.**

## INTERROGATORY NO. 13

This interrogatory asks Plaintiffs to specify the annual income earned by Michael Cheromiah, Sr., for the past twenty years, and further states that the answer can be stated in terms of average annual income or an income range. Plaintiffs answered, stating that Michael Cheromiah earned an average of approximately $21,000 per year. Defendant moves to compel a more complete answer to this interrogatory, and also to require that the interrogatory be answered by Plaintiff Michael Cheromiah, Sr. Plaintiffs respond stating that the interrogatory was not addressed to either plaintiff specifically and was properly answered by Plaintiff Diane Cheromiah. Plaintiffs further respond by stating that the answer properly indicated an income range.

This Court rules that Plaintiff, Michael Cheromiah, Sr., must provide an answer to Interrogatory No. 13. Further, the Court rules that Mr. Cheromiah's answer provide an "income range" for each of the following years: 1998, 1997, 1996, 1995 and 1994.

**IT IS THEREFORE ORDERED** that Plaintiff Michael Cheromiah answer Interrogatory No. 13 as directed above no later than **July 9, 1999.**

## INTERROGATORY NO.17

Interrogatory No. 17 refers to Request for Admission No. 12(A), which states:

Request: Admit that plaintiffs are not making any legal claims based on Dr. Kelly's conduct on October 31, 1995.
Response: Denied.

The interrogatory asks "If Request for Admission number 12(A) is not admitted, please specifically identify the legal claims plaintiffs are making based upon Dr. Kelly's conduct of October 31, 1995." Plaintiffs responded to the interrogatory by referring to the allegations of their first Amended Complaint, and to the expert report and deposition of Dr. Henry. Defendant objects to this answer,

because the First Amended Complaint refers to violations of the Emergency Medical Treatment and Active Labor Act , 42 U.S.C. § 1395dd, and because "Dr. Henry was retained (according to his deposition testimony) to testify about EMTALA." Defendant then complains that it can not determine from Plaintiffs' answer whether Plaintiff is claiming that Dr. Kelly was negligent, or if her alleged negligence was a proximate cause of injury. In the Response to Defendant's Motion to Compel, Plaintiffs state:

> Plaintiffs fully answered this question in their response to interrogatory No. 10. Plaintiffs' responses state that Dr. Kelly breached the standard of care by sending Michael Cheromiah home instead of administering proper treatment. That is the basis for the legal claim against Dr. Kelly. The reference to the complaint and the (sic) Dr. Henry's expert report was meant to supplement the information Plaintiffs had already provided . . .

The Court finds that Plaintiffs have adequately answered Interrogatory No. 17. Defendant's Motion to Compel and Answer to Interrogatory No. 17 is therefore denied.

### INTERROGATORY NO. 18

This interrogatory asks Plaintiffs to specify the amount of money won or lost by Diane M. Cheromiah since the death of her Michael Cheromiah, and also to state whether winnings and losses were reported as taxable income. Plaintiffs objected to the interrogatory as a "mischaracterization and misleading," and responded by stating that her gambling had increased following her child's death, but that she did not know how much she had won or lost.

> Plaintiffs' objection is overruled. However, I find that Plaintiffs have adequately answered the Interrogatory. Defendant's Motion to Compel an answer to Interrogatory No. 18 is therefore denied. Based on the answer provided, however, Plaintiffs will be precluded from claiming monetary damages as a result of increased gambling.

5

## INTERROGATORY NO. 19

This interrogatory asks Plaintiffs to identify all facts and opinions, including statements made by potential witnesses, which support the allegation that "the untreated bacterial infection in and around [Michael Cheromiah's] heart had caused a rupture of the myocardium." Plaintiffs objected to this interrogatory claiming that it was misleading, because this theory had been withdrawn. Plaintiffs then answered the interrogatory by stating that there were no facts or opinions that supported such a theory.

The Court finds that Plaintiffs have adequately answered Interrogatory No. 19. Defendant's Motion to Compel an answer to Interrogatory No. 19 is therefore denied.

## INTERROGATORY NO. 20

This interrogatory asks Plaintiffs whether they are contending that Michael Cheromiah's myocardium did not rupture, and if so, to identify all facts and opinions, including statements made by potential witnesses, which support that claim. In addition, the interrogatory asks the Plaintiff's to state what did happen to Michael Cheromiah's myocardium if it did not rupture. Plaintiffs answered by referring Defendant to the expert reports and depositions of Drs. Allen, Henry, Rosen and Schapira. Defendant moves to compel a more complete answer in order to determine Plaintiffs' theory of the case, citing to a change in Plaintiffs' theory of their case, and particularly inquiring as to whether treating physicians not designated as experts will testify as to the issue of the condition of the decedent's myocardium.

Prior to the 1993 amendments to Rule 26 F.R.Civ.P, parties were allowed to serve interrogatories requiring an adverse party to identify experts and "state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds

6

for each opinion." Fed. R. Civ. P. 26(b)(4) (1992) (amended 1993). That process has been replaced by current Rule 26(a)(2), which mandates the production of a report, prepared and signed by the expert witness, disclosing "a complete statement of all opinions to be expressed and the basis the reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; . . .etc." In addition, expert witnesses may be deposed following the production of their reports. Defendant does not complain that Plaintiffs' Rule 26 disclosures have been inadequate, and depositions have been taken. Rule 26(e) F.R.Civ.P. recognizes that a party's theories may evolve during the course of litigation, and provides a mechanism for accounting for that change. Accordingly, I find that Defendant's Motion to compel answer to Interrogatory 20, as it pertains to Drs. Allen, Henry, Rosen and Schapira is not well taken, and is denied

The requirement of a written report pursuant to Rule 26(a) (2) applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report. Commentary to Fed.R.Civ.P. 26(a) (1993), 146 F.R.D. 401, 635 (1993). Defendant may still discover those opinions through interrogatories, requests for production of documents, and depositions of the treating physicians. Therefore, if Plaintiffs' have knowledge of treating physicians who, based solely on their treatment of and/or interaction with the decedent, have opinions as to the state of the decedent's myocardicum, Plaintiffs' must disclose that information.

Finally, Plaintiffs were required to identify and provide Rule 26(a)(2) disclosures for

any treating physician specially retained or employed to render a medical opinion based on facts or information not learned in the course of the treatment of the decedent *Hall v. Sykes*, 164 F.R.D. 46, 48-49 (E.D.Va.1995). Any witness not properly disclosed will not be allowed to testify.

**IT IS THEREFORE ORDERED** that Plaintiffs supplement their answer to Interrogatory No. 20, as directed above, no later than **July 9, 1999.**

### INTERROGATORY NO. 25

This interrogatory asks Plaintiff's to specify the factual basis for every Request for Admission which they did not admit, or for which they provided a qualified admission, including in their answer (a) all facts supporting the refusal to admit or qualified admission, (b) all documents, notes, reports, memoranda, statements, recordings or other tangible or intangible thing supporting the refusal to admit or qualified admission, (c) the identity of the custodians of all documents identified, (d) the identity of all consultants purporting to have any knowledge or factual data upon which the refusal to admit or the qualified admission was made, and (e) all articles, textbooks, etc., supporting in any manner the refusal to admit or qualified admission. Plaintiffs objected to this interrogatory on the grounds that it was oppressive and burdensome, then responded by referring Defendant to all the documents and depositions referred to in Plaintiffs' Answers to Defendants' first set of Requests for Admissions.

The Court finds that Interrogatory No. 25 is oppressive and burdensome. *See Hiskitt v. Walmart Stores,* 180 F.R.D. 403, 404-405 (D.Kan. 1998)*; See Hilt v. SFC, Inc.*, 170 FRD 182, 186 (D. Kan. 1997),. Defendants' Motion to Compel an answer to Interrogatory No. 25 is therefore denied.

**IT IS SO ORDERED.**

/s/ Richard L. Puglisi
RICHARD L. PUGLISI
United States Magistrate Judge