IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL CHEROMIAH, individually and
DIANNE CHEROMIAH, individually and as
Personal Representative of the ESTATE OF
MICHAEL CHEROMIAH, deceased,

           Plaintiffs,

vs.                                                     Civ. No. 97-1418 MV/RLP

UNITED STATES OF AMERICA & ACOMA
CANONCITO LAGUNA HOSPITAL,

           Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Michael Cheromiah and Dianne Cheromiah, move this Court pursuant to Rule 37 Fed.R.Civ.P. to compel Defendant, United States, to respond to Request 39 of Plaintiffs' Third Set of Requests for Production.[1] (**Docket No. 100**). For the reasons set forth below, the motion is granted in part and denied in part.

Request No. 39 seeks production of Medical Staff meeting minutes from Acoma Canoncito Laguna Hospital ("ACLH" herein) from 1994 through 1996. Citing Weekoty v. United States, 30 F. Supp. 2d 1343 (D. N.M. 1998), Plaintiffs argue that the items requested are not protected from discovery by the self-critical analysis privilege, which they contend is limited to a subset of peer review documents created during mortality and morbidity committee reviews.

---

[1] The Parties have advised the Court that their dispute over Defendant, United States, responses to Requests No. 29, 40 and 43 have been resolved.

Defendant, United States, has produced documents in response to Request No. 39[2], but objects to producing that portion of Medical Staff meeting minutes which consist of confidential discussions of and recommendations concerning ACLH and its health care providers' care and treatment of patients.[3]  Also relying on Weekoty, the Defendant argues that the self-critical analysis (medical peer review) privilege applies to all confidential medical deliberations concerning the way a hospital and its health care providers provide medical care and treatment, whether or not such deliberations occur in the context of a formal mortality and morbidity review.

I find that the self-critical analysis privilege is not so narrow as described by Plaintiffs, nor as

---

[2] Defendant states that it has produced 3,172 pages of material in response to Request No. 39.  Plaintiffs reply that of those pages, only 18 pages reflect minutes of Medical Staff Meetings, the remainder consisting of Policies and Procedures, IHS updates on Youth Initiative, forms or Advance Directives.

[3] In support of its objection, Defendant submitted the affidavit Dr. Judith Thierry, Acting Service Unit Director and former Clinical Director at ACLH  In ¶10 of her affidavit, Dr. Thierry states:

> I am familiar with the binders of Medical Staff Executive Committee meeting minutes that are the subject of discovery requests in this litigation.  The Medical Staff meeting minutes contain, among other things, discussions of and/or references to information from peer reviews and morbidity and mortality reviews documenting patient care and provider information.  In addition, they discuss or refer to chart reviews, (identifying patients, providers and deficiencies in charts), clinical pertinence (describing patient and/or provider specific treatment); invasive procedure reviews (describing patient and/or provider and commenting on care).  As made clear in paragraph 5 (and its subparts), the Medical Staff is the clearing house for virtually all peer review and quality assurance activities in which ACL Hospital engages.  The Medical Staff meetings are the forum for identifying and exploring areas of concern with patient care and provider performance and with more general risk management and quality assurance issues.  Suggestions for conducting peer reviews are frequently generated during meetings of the Medical Staff, and the findings of the quality assurance/risk management committees identified above are discussed and analyzed and recommendations are made.  The need for the Medical Staff to have an open forum in which to discuss any issue of importance to the care and treatment of patients and performance of their peers, including the whole range of quality assurance and risk management issues that may arise, without fear that the minutes of those discussions is going to be disclosed is subsequent litigation can not be overstated.

broad as described by Defendant.

In <u>Weetoky v. U.S.</u>, <u>supra</u>, the Plaintiff sought to discover documents from a morbidity and mortality review conducted following the death of Plaintiff's decedent. Judge Hansen, in holding that the self-critical analysis privilege protected this document from discovery held:

> . . . (T)he self-critical analysis privilege is particularly pertinent in the medical context as it promotes frank and open discussions which protect lives and improve patient care. (Citation omitted). Because of this unique role in preserving the public health, medical morbidity and mortality reviews must be distinguished from other peer review cases.

<u>Weekoty v. U.S.</u>, 30 F.Supp. 2d at 1345.

The "other peer review" cases referred to reviews unconnected to medical care, for example, review of mortgage loan practices, <u>Spencer Savings Bank v. Excell Mortgage Corp.</u>, 960 F. Supp. 835, 840-844 (D. N.J. 1997).

The cases cited by Judge Hansen as recognizing the confidentiality of peer review in the context of medical care indicate that entitlement to protection from discovery is not dependent on the name of the committee or group conducting the review. <u>Bredice v. Doctors Hospital, Inc.</u>, 50 F.R.D. 249 (D.D.C. 1979), <u>aff'd without opin.</u>, 479 F.2d 920 (D.C. Cir. 1973) (monthly reviews of clinical work at the hospital were shielded from discovery); <u>Balk v. Dunlap</u>, 163 F.R.D. 360, 363 (D. Kan. 1995) (medical staff minutes of the obstetrics and gynecology department were protected from discovery); <u>Brem v. DeCarlo, Lyon, Hearn & Pazourek, P.A.</u>, 162 F.R.D. 94, 98-99 (D. Md. 1995) (opinion of physician regarding competence of former residence, gained from administering a risk or error management program during which missed diagnoses were presented as a teaching tool held not discoverable); <u>Spinks v. Children's Hospital National Medical Center</u>, 124 F.R.D. 9, 12 (D.D.C. 1989) (minutes of Morbidity and Mortality conference, pertaining to a discussion of Plaintiff's

medical care, held not discoverable); Utterback v. Yoon, 121 F.R.D. 121 F.R.D. 296 (W.D. Ky, 1987) (Board of Investigation memorandum and V.A. quality assurance records not discoverable), and Gillman v. U.S., 53 F.R.D. 316, 318-319 (S.D. N.Y. 1971) (reports of hospital's Board Inquiry of investigating suicide not subject to discovery). Rather, the protection is accorded to the process which, though the promise of confidentiality, promotes open discussions among medical providers necessary to accurately analyze prior medical procedures and decisions in order to correct errors and improve patient care.

The Affidavit of Dr. Judith Thierry, at ¶ 10, states that minutes at issue contain suggestions for peer review, references to peer and morbidity and mortality reviews, other types of reviews which may or may not comment on the quality of patient care as well as discussions of quality assurance issues. Only that portion of the Minutes of the Medical Staff reflecting discussions of medical procedures and decisions for the purpose of correcting past errors and improving patient care are shielded from discovery by the self-critical analysis privilege.

**IT IS THEREFORE ORDERED** that Defendant, United States, shall, to the extent it has not already done so, produce those portions of the minutes of the Medical Staff meeting which do not reflect discussions of medical procedures and decisions for the purpose of correcting past errors and improving patient care.

**IT IS FURTHER ORDERED** that the documents covered by this Order be produced no later than July 15, 1999.

_____
RICHARD L. PUGLISI
United States Magistrate Judge