IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL CHEROMIAH, individually;
and DIANE M. CHEROMIAH, individually,
and as Personal Representative of the Estate
of Michael D. Cheromiah, deceased,

                Plaintiffs,

vs.                                             CIVIL NO. 97-1418 MV/RLP

UNITED STATES OF AMERICA,

                Defendant,

PUEBLO OF ACOMA,

                Amicus.

## MEMORANDUM AND ORDER DENYING MOTION
## TO ENFORCE SETTLEMENT AGREEMENT
## AND GRANTING DEFENDANT'S CROSS-MOTION TO COMPEL

THIS MATTER is before the Court on Plaintiff's Motion to Enforce Settlement Agreement [Doc. 207], and on the United States' Cross-Motion to Compel Plaintiffs to Produce the Executed Stipulation for Compromise Settlement [Doc. 211]. The motions were referred to the undersigned Magistrate Judge by the Honorable Martha Vazquez.

The Court considered the motion, memorandum in support of motion, Defendant's response, and Plaintiffs' reply; and Plaintiffs' response to the government's cross-motion, and the government's reply. Oral argument is not necessary, nor is there a factual dispute that requires an evidentiary hearing. These matters may be resolved based on the parties' submissions.

Plaintiffs' Michael Cheromiah and Diane M. Cheromiah ("Cheromiahs") seek an order compelling enforcement of a settlement. Cheromiahs also seek an award of attorney fees and costs.

Alternatively, Cheromiahs state that should the Court determine there is no settlement, that the Court sanction Defendant and impose additional costs and fees related to trial preparation. The Defendant, United States of America ("USA"), seeks an order directing Cheromiah's to sign the executed settlement documents and to return them so that closing documents can be submitted to the Court.

**Background**

This medical malpractice action was brought against the USA. Cheromiahs contend that Michael Cheromiah, a twenty-one year old Laguna Pueblo native, presented himself at the Acoma-Canoncito-Laguna ("ACL") Hospital, a facility operated by the Public Health Service. Cheromiahs allege that Michael Cheromiah suffered from a pleural bacterial or viral infection, and that his condition was neither correctly diagnosed nor treated by ACL. Rather, Michael Cheromiah was sent home and the untreated condition caused his death.

Cheromiahs contend that the USA's lack of adequate funding for ACL's emergency/urgent care facilities was a contributing factor in the hospital's decision to send Michael Cheromiah home. Thus, a significant part of Cheromiahs' claims focused on the government's lack of funding for ACL's emergency/urgent care facilities. (See Cheromiahs' Proposed Findings of Fact 6, 8, 9, 10, 12, 13 and 14 [Doc.202]).

Prior to trial, the Court issued a series of rulings adverse to the USA. They included a determination that the cap on damages under the New Mexico Medical Malpractice Act was not applicable [Doc. 144]; that the trial would not be vacated so as to allow the Solicitor General to seek certification of the Court's ruling for appeal [Doc. 162]; that Cheromiahs' economic expert on hedonic damages would not be precluded from testifying [Doc. 198]; and, that the government's request to dismiss Diane Cheromiah's claim for lack or consortium would be denied [Doc. 199].

Following these adverse rulings, and shortly after the Court's pretrial conference, Cheromiahs made a settlement offer to USA. The offer was in two parts: (1) a sum of money to be paid directly to Cheromiahs and Cheromiahs' counsel; and (2) a sum of money to be paid in the name of Michael Cheromiah to ACL, over a five-year period to improve emergency/urgent care.

USA rejected the proposal and countered with its own offer to settle the case for $600,000. No additional amounts of money for ACL's emergency/urgent care facility were included. Cheromiahs rejected USA's proposal.

A few days later, USA contacted Cheromiahs to determine if an agreement could be forged between the parties to dismiss the litigation if the Cheromiahs were able to obtain a commitment from a non-party, Indian Health Services ("IHS") to provide additional funding to ACL. The additional funding was to be in a total amount of $75,000, paid in incremental amounts of $25,000 a year to ACL to be used in ACL's emergency/urgent care needs. USA advised that the payment for the additional funding would not, and, indeed, could not, come out of the judgment fund, and that the USA's proposal was contingent on USA obtaining concurrence from IHS.

Cheromiahs agreed to the proposal, and, subsequently, IHS also approved the funding agreement. It is clear that the parties intended, and that the settlement agreement encompasses, two obligations: (1) USA will pay to Cheromiahs and Cheromiahs' attorneys the sum of $600,000; and (2)IHS will allocate an additional $25,000 a year, for a period of three years, to be paid to ACL for use in ACL's emergency/urgent care facility.

**Present Dispute**

In accord with USA's proposal, government attorneys sought and obtained a commitment from the Department of Health and Human Service, Public Health Section, to provide additional

financial support to ACL's emergency/urgent care operations. The agreement is succinctly set out in USA's August 10, 1999 letter to Cheromiahs' counsel:

> I concur in your understanding that Plaintiffs agree to settle all their claims against the United States for a payment of $600,000 from the United States. Your letter also correctly states that your agreement was contingent on a separate agreement between IHS in Albuquerque and ACL Hospital–an agreement to which neither Plaintiffs nor the Department of Justice is a party. Pursuant to that agreement, $25,000 of HHS appropriated funds and not judgment fund monies will be reallocated for three years to provide greater financial support for emergency services at ACL Hospital.

In accord with the settlement, USA's counsel sought and obtained an agreement to provide the additional funding. Indeed, in an August 10, 1999 letter, James Toya, Area Director of Indian Health Services Office, directed Ronald C. Begay, Service Unit Director at PHS Hospital as follows:

> Please be advised I am directing you to budget and make available a minimum of $25,000 per year for the next three years, subject to available appropriation. The purpose of this reallocation of funds is to provide financial and administrative support for medical providers in urgent/emergency care at the ACL Hospital.
>
> Please provide me with a written plan for implementation of this reallocation by August 27, 1999. The plan should reflect a September 20, 1999 effective date.

Cheromiahs now contend that the language, "subject to available appropriation," in the Toya letter is a contingency which is not part of the parties' agreement. Cheromiahs argue that the funds are to be guaranteed, and that the "subject to available appropriation" language is USA's way of avoiding its contractual obligation. Cheromiahs argue that USA seeks to avoid performing its obligations, demands that USA sign an unconditional agreement to provide the additional funding for ACL for the next three years, and that the Court utilize its "continuing jurisdiction" to enforce the agreement.

4

USA, on the other hand, argues that it has performed, or is performing, its promises:

> [P]laintiffs concede that they agree to settle all their claims against United States for a monetary payment of $600,000 from the United States and that this agreement was contingent on a separate local agreement between Indian Health Services and Acoma-Laguna Hospital whereby $25,000 per year for three years would be reallocated for emergency services at ACL Hospital . . . and because these agreements have been satisfied, the Plaintiffs' motion to enforce should be denied.

(USA's response, p.6).

USA further argues that Cheromiahs' demand that the additional funding be given to ACL Hospital regardless of congressional allocations is violative of the Anti-Deficiency Act, 31 U.S.C. § 1341, which precludes "Any federal employee or agency from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation." Hercules, Inc. v. United States, 516 U.S. 417, 427, 116 S. Ct. 981, 987 (1996); Lopez v. Johns Manville, 649 F. Supp. 149 (W.D. Wash. 1986), *aff'd* 858 F.2d 712 (Fed. Cir. 1988). USA argues that unless Congress allocates funds and authorizes expenditure of funds through an appropriations bill, the agency is prohibited from spending money it does not have. OPM v. Richmond, 496 U.S. 414, 416, 110 S. Ct. 2465, 2467 (1990)( "[P]ayments of money from the federal treasury are limited to those authorized by statute."). Finally, USA argues that the Court cannot order a future reallocation without regard to appropriations. The Court agrees.

## **Analysis**

A settlement agreement is a contract. Consumers Gas & Oil, Inc. v. Farmland Indus., Inc., 84 F.3d 367, 370 (10th Cir. 1996). As with any other contract, if there is a breach, a party may bring an action to enforce the contract. Contrary to Cheromiahs' belief, the Court does not maintain

"continuing jurisdiction" to enforce a settlement. Rather, the Court's jurisdiction expires ten days after entry of judgment. Thus, if an obligation is to be performed at some time in the future, outside of the Court's jurisdictional time limit, the appropriate remedy is to bring a separate lawsuit to enforce the contract. Consumers Gas & Oil, Inc. at 370 ("a court lacks subject matter jurisdiction to enforce a settlement absent an independent jurisdictional basis or a reservation of jurisdiction in the order dismissing the action.").

Here, Cheromiahs cannot demonstrate that USA breached its agreement. Indeed, the documents submitted in support of USA's response indicate that USA has taken steps to ensure that the additional funds for ACL's emergency/urgent care unit are made available. It is only if the additional funding is not provided that Cheromiahs would have a basis to bring an action to enforce the agreement. As yet, there is no breach and, consequently, there can be no action to compel enforcement. Thus, Cheromiahs' motion is premature.

Cheromiahs' demand for an unconditional guarantee to allocate funds not yet appropriated violates a basic concept of separation of powers. Congress has the exclusive authority to appropriate funds and to allocate appropriated funds to various governmental agencies. U.S. Const. Art. I, §§ 8, 9; Rochester Pure Waters Dist. v. EPA, 960 F.2d 180, 184 (D.C. Cir. 1992). Cheromiahs' demand that USA sign a contract obligating it to pay funds in the future, even if those funds are not appropriated, would violate federal law. Hercules, Inc. v. United States; Lopez v. Johns Manville.

Here, USA does not argue that it should be relieved from the bargain it struck. Rather, it seeks to carry out the parties' agreements in accord with the restrictions of federal law. Moreover, the USA has affirmatively acted to ensure that IHS carry out the first of three separate additional allocations for ACL's emergency/urgent care unit.

Cheromiahs claim that USA is in violation of its obligations because the additional payments were to be made as a memorial to the memory of Michael Cheromiah, and that Toya's letter does not refer to Michael Cheromiah. Yet, Cheromiahs failed to demonstrate how USA breached that agreement. The absence of a reference to Michael Cheromiah in the Toya letter is of no legal consequence. It is clear that both the Cheromiahs and USA intend to allocate the additional funds to ACL as a memorial to the decedent. Indeed, an August 9, 1999 story in the Albuquerque Journal states in part:

> At the insistence of his mother, Diane Cheromiah, who filed suit on his [Michael Cheromiah's] behalf, $75,000 will go to improve ACL Hospital emergency room services over a three-year period as a memorial to Michael.

There is simply no evidence demonstrating that USA has reneged on this obligations.

The Court concludes that there is no need for an evidentiary hearing. There are no material facts in dispute. USA has not breached its agreement and, to the contrary, has affirmatively acted in support of its promises. The Court denies Cheromiahs' motion to enforce, and grants USA's motion to compel Cheromiahs are to execute the settlement documents and return them to USA so that this litigation may be brought to an end. All requests for costs and fees are denied.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEYS FOR PLAINTIFFS:
Randi McGinn, Esq.
Kimberly Ann Richards, Esq.
James S. Bromberg, Esq.
ATTORNEYS FOR DEFENDANT:
Marilyn S. Hutton, Esq.
Madeline Henley, Esq.
ATTORNEYS FOR PUEBLO OF ACOMA:
Peter C. Chestnut, Esq.
Ann Berkley Rodgers, Esq.